# EXHIBIT C

AMERICA 2030 CAPITAL LIMITED
Hamilton Development, Unit B
Charlestown, Nevis
Federation of St.Kitts & Nevis

November 9, 2018

Guo Hongxin, Xie Yu, Xiong Hanqing
Zhong Zhan, Ang Kay Tiong, Sherry Ng
Sunpower Business Group PTE LTD
No. 2111 Chengxin Avenue
High-Tech Industrial Park
Jiangning District, Nanjing
Jiangsu, 211112, China

Via Email

## DEFAULT AND FORFEITURE NOTICE

Sunpower Business Group PTE LTD ("Sunpower") executed a Master Loan Agreement ("MLA") on June 4th, 2018. Amongst various covenants, terms, provisions and obligations made by Sunpower, a default and forfeiture of the Pledged Collateral was provided for, in the event Sunpower breached the MLA and defaulted.

On October 2nd, 2018 Sunpower was notified via FedEx Global that it is not meeting the terms and conditions of the MLA and is in default and Sunpower was sent a "Default and Acceleration Notice."

To date, Sunpower has failed to respond to the "Default and Acceleration Notice" and satisfy the default as stipulated in Section 7.2 of the MLA, which states: that Borrower is obligated to satisfy "outstanding amounts owing to Lender, whereupon the Borrower shall repay all such outstandings within three (3) business days of the notice." Failure to pay amounts owed within three (3) business days of the date of this letter will trigger forfeiture of the Pledged Collateral, which constitutes fourteen million shares (14M) of Sunpower Group LTD ("SPWG") trading on the Singapore stock exchange.

Section 7 of the MLA stipulates that "if trading is halted for more than three (3) days by a regulatory agency or otherwise, it shall be an immediate and incurable default. SPWG had not traded on Monday November 5th, 2018, on Tuesday November 6th, 2018, on Wednesday November 7th, 2018, on Thursday November 8, 2017.

Further, the MLA states that if there is any interference by the Borrower or Central Depository agency, with the Depository Broker holding the subject SPWG shares of the Pledge Collateral, that it shall be an immediate and incurable default.

Sunpower did just that, interfered with the Depository Broker, the Clearing Agency and the Central Depository interfered with the Depository Broker by sending letters and demanding that shares be frozen. The inquiries by the Singapore Central Depository were made on behalf of Sunpower. Further, Sunpower through its counsel had sent a letter dated November 8, 2018 to Mellon Omnibus demanding

that shares be frozen and requesting and stating that the MLA be terminated. Such inquiries on behalf of Sunpower questioned the validity and enforceability of the MLA, interfered with the MLA and sought to "declare null and void" the MLA.

Section 4.6 of the MLA states: "Borrower will not seek injunctive relief from any court of law, regulatory body or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Injunctive relief by Borrower or any interference by Borrower or central depository agency shall be an immediate and an incurable default. Borrower will not interfere in any way or challenge the validity or enforceability of this Agreement and same shall be a breach thereof."

Sunpower has sought injutive relief on or about November 8, 2018, in breach of the MLA.

Section 7.1 (b) of the MLA states: "If any representation or warranty made or failed to be made by Borrower in this Agreement or in any other Loan Document shall prove to have been materially untrue or misleading."

Section 7.1 (f) of the MLA states: If the Loan Document shall, at any time after their execution and delivery for any reason, cease to be in full force and effect or shall be declared null and void or the validity or enforceability thereof shall be contested by the Borrower or by any other Person."

Borrower mislead the Lender in to believing that the Lender would be entitled to a "Break-Up Fee" as a condition and consideration for entering in to the MLA. Borrower mislead the Lender in believing that injunctive relief would not be sought. Borrower mislead the Lender in to believing that Borrower will not interfere with the Depository Broker or Central Depository. Borrower mislead the Lender in to believing that sufficient collateral would be pledged for a $25M USD loan and subsequently renegotiated by Borrower to a $3M USD loan. At all times Borrower acted in bad faith in misleading the Lender of its intent to perform in accordance with the MLA, CMA and POA.

For the reasons stated below, the Pledged Collateral is subject to forfeiture:

a) Sunpower failed to satisfy the Break-Up Fee provision by failing to remitt the required funds to the Lender within the allotted time frame as stipulated in Section 7.2 of the MLA.
b) The Issuer of the SPWG securities halted trading for more than 3 days in breach of Section 7.1 (c).
c) The Central Depository on behalf of Sunpower and Sunpower interfered with the Depository Broker.
d) Borrower sought and filed for injunctive relief in breach of Section 4.6.
e) Borrower terminated the MLA in breach of Section 7.1 (f)
f) Borrower invalidated, suspended, limited, terminated and restricted the MLA.

In accordance with the MLA the Lender is invoking the forfeiture of the Pledged Collateral provision.

Section 10.3 of the MLA states: "Survival. Except as herein provided, all representations, warranties and covenants made in this Agreement shall survive the execution, delivery and termination of this Agreement."

The Dispute and Arbitration clause provides that there shall be forty five (45) day consultation period prior to the initiation of Arbitration. It is the Lenders position that such period has begun on November 2nd, 2018 when Sunpower was notified of the Default And Acceleration Notice, whereby Sunpower was offered to satisfy its obligation to the Lender by paying the Break-Up Fee.

On November 3rd 2018 and November 4th, 2018, the Lender and Sunpower representatives exchanged emails and the discussion of the Break-Up Fee was acknowledged, hence confirming that the 45 day consultation period has begun.

The Lender intends to file for Arbitration which will commence on or after December 17th, 2018 in accordance with the MLA and the Addendum executed between Sunpower and the Lender, which stipulates that Clause 8.1 of the MLA be amended to arbitrate in the event of dispute in St.Kitts and Nevis, administered by Arbitrator Conflict Resolution Service of St. Kitts and Nevis under arbitration rules of The Arbitrator Conflict Resolution Service of St.Kitts and Nevis and all such decisions and awards will be final and binding upon the parties.

Governing Law in the MLA was amended by the Addendum which stated: "Clause 8.2 will be amended to St.Kitts and Nevis and Hong Kong removed."

Therefore, the Arbitration will take place in the Federation of St.Kitts and Nevis as provided in the MLA and the Addendum which was executed by the respective Parties. The Lender intends to seek an award of breach and forfeiture of the Pledged Collateral.

Further, please be advised that according to Section 2.4 (c) of the MLA, the Borrower is responsible for all of Lenders costs in "enforcing, executing and maintaining this Agreement" and we will vigorously pursue and enforce all terms and conditions under the MLA, including reimbursement for Lenders legal fees.

This Notice is being sent via email to all of the parties listed in the MLA in the notice section.

Sincerely,

Val Sklarov
Operations Manager

AMERICA 2030 CAPITAL LIMITED
Hamilton Development, Unit B
Charlestown, Nevis
Federation of St.Kitts & Nevis

November 9, 2018

Ma Ming, Xie Yu, Xiong Hanqing
Zhong Zhan, Ang Kay Tiong, Sherry Ng
Sunpower Business Group PTE LTD
No. 2111 Chengxin Avenue
High-Tech Industrial Park
Jiangning District, Nanjing
Jiangsu, 211112, China

Via Email

## DEFAULT AND FORFEITURE NOTICE

Sunpower Business Group PTE LTD ("Tournan") executed a Master Loan Agreement ("MLA") on June 4th, 2018. Amongst various covenants, terms, provisions and obligations made by Tournan, a default and forfeiture of the Pledged Collateral was provided for, in the event Tournan breached the MLA and defaulted.

On October 2nd, 2018 Tournan was notified via FedEx Global that it is not meeting the terms and conditions of the MLA and is in default and Tournan was sent a "Default and Acceleration Notice."

To date, Tournan has failed to respond to the "Default and Acceleration Notice" and satisfy the default as stipulated in Section 7.2 of the MLA, which states: that Borrower is obligated to satisfy "outstanding amounts owing to Lender, whereupon the Borrower shall repay all such outstandings within three (3) business days of the notice." Failure to pay amounts owed within three (3) business days of the date of this letter will trigger forfeiture of the Pledged Collateral, which constitutes fourteen million shares (14M) of Sunpower Group LTD ("SPWG") trading on the Singapore stock exchange.

Section 7 of the MLA stipulates that "if trading is halted for more than three (3) days by a regulatory agency or otherwise, it shall be an immediate and incurable default. SPWG had not traded on Monday November 5th, 2018, on Tuesday November 6th, 2018, on Wednesday November 7th, 2018, on Thursday November 8, 2017.

Further, the MLA states that if there is any interference by the Borrower or Central Depository agency, with the Depository Broker holding the subject SPWG shares of the Pledge Collateral, that it shall be an immediate and incurable default.

Tournan did just that, interfered with the Depository Broker, the Clearing Agency and the Central Depository interfered with the Depository Broker by sending letters and demanding that shares be frozen. The inquiries by the Singapore Central Depository were made on behalf of Tournan. Further, Tournan through its counsel had sent a letter dated November 8, 2018 to Mellon Omnibus demanding

that shares be frozen and requesting and stating that the MLA be terminated. Such inquiries on behalf of Tournan questioned the validity and enforceability of the MLA, interfered with the MLA and sought to "declare null and void" the MLA.

Section 4.6 of the MLA states: "Borrower will not seek injunctive relief from any court of law, regulatory body or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Agreement. Injunctive relief by Borrower or any interference by Borrower or central depository agency shall be an immediate and an incurable default. Borrower will not interfere in any way or challenge the validity or enforceability of this Agreement and same shall be a breach thereof."

Tournan has sought injutive relief on or about November 8, 2018, in breach of the MLA.

Section 7.1 (b) of the MLA states: "If any representation or warranty made or failed to be made by Borrower in this Agreement or in any other Loan Document shall prove to have been materially untrue or misleading."

Section 7.1 (f) of the MLA states: If the Loan Document shall, at any time after their execution and delivery for any reason, cease to be in full force and effect or shall be declared null and void or the validity or enforceability thereof shall be contested by the Borrower or by any other Person."

Borrower mislead the Lender in to believing that the Lender would be entitled to a "Break-Up Fee" as a condition and consideration for entering in to the MLA. Borrower mislead the Lender in believing that injunctive relief would not be sought. Borrower mislead the Lender in to believing that Borrower will not interfere with the Depository Broker or Central Depository. Borrower mislead the Lender in to believing that sufficient collateral would be pledged for a $25M USD loan and subsequently renegotiated by Borrower to a $3M USD loan. At all times Borrower acted in bad faith in misleading the Lender of its intent to perform in accordance with the MLA, CMA and POA.

For the reasons stated below, the Pledged Collateral is subject to forfeiture:

a) Tournan failed to satisfy the Break-Up Fee provision by failing to remitt the required funds to the Lender within the allotted time frame as stipulated in Section 7.2 of the MLA.
b) The Issuer of the SPWG securities halted trading for more than 3 days in breach of Section 7.1 (c).
c) The Central Depository on behalf of Tournan and Tournan interfered with the Depository Broker.
d) Borrower sought and filed for injunctive relief in breach of Section 4.6.
e) Borrower terminated the MLA in breach of Section 7.1 (f)
f) Borrower invalidated, suspended, limited, terminated and restricted the MLA.

In accordance with the MLA the Lender is invoking the forfeiture of the Pledged Collateral provision.

Section 10.3 of the MLA states: "Survival. Except as herein provided, all representations, warranties and covenants made in this Agreement shall survive the execution, delivery and termination of this Agreement."

The Dispute and Arbitration clause provides that there shall be forty five (45) day consultation period prior to the initiation of Arbitration. It is the Lenders position that such period has begun on November 2nd, 2018 when Tournan was notified of the Default And Acceleration Notice, whereby Tournan was offered to satisfy its obligation to the Lender by paying the Break-Up Fee.

On November 3rd 2018 and November 4th, 2018, the Lender and Tournan representatives exchanged emails and the discussion of the Break-Up Fee was acknowledged, hence confirming that the 45 day consultation period has begun.

The Lender intends to file for Arbitration which will commence on or after December 17th, 2018 in accordance with the MLA and the Addendum executed between Tournan and the Lender, which stipulates that Clause 8.1 of the MLA be amended to arbitrate in the event of dispute in St.Kitts and Nevis, administered by Arbitrator Conflict Resolution Service of St. Kitts and Nevis under arbitration rules of The Arbitrator Conflict Resolution Service of St.Kitts and Nevis and all such decisions and awards will be final and binding upon the parties.

Governing Law in the MLA was amended by the Addendum which stated: "Clause 8.2 will be amended to St.Kitts and Nevis and Hong Kong removed."

Therefore, the Arbitration will take place in the Federation of St.Kitts and Nevis as provided in the MLA and the Addendum which was executed by the respective Parties. The Lender intends to seek an award of breach and forfeiture of the Pledged Collateral.

Further, please be advised that according to Section 2.4 (c) of the MLA, the Borrower is responsible for all of Lenders costs in "enforcing, executing and maintaining this Agreement" and we will vigorously pursue and enforce all terms and conditions under the MLA, including reimbursement for Lenders legal fees.

This Notice is being sent via email to all of the parties listed in the MLA in the notice section.

Sincerely,

Val Sklarov
Operations Manager