# EXHIBIT D

ARBITRATION APPLICATION

IN THE MATTER OF AN ARBITRATION BY AGREEMENT OF THE PARTIES

AND

(The Arbitration Act, Cap. 3.01)



# THE ARBITRATOR

## ARBITRATION APPLICATION

To:

PARTIES TO THIS ARBITRATION

DECEMBER 21, 2015

THE ARBITRATOR
P.O. Box 2477, Basseterre, St. Kitts

# ARBITRATION APPLICATION

## IN THE MATTER OF AN ARBITRATION BY AGREEMENT OF THE PARTIES

### AND

### (The Arbitration Act, Cap. 3.01)

**TO:**

    The Arbitrator

    Address:

    Phone:

    Fax:

    Email:

**PARTIES TO THIS ARBITRATION**

**BETWEEN:**

    Party 1                                                        (the "Claimant")

    America 2030 Capital Limited

    *Address for service:*   Hamilton Development, Unit B. Charlestown, Nevis.

    Phone: 1-623-213-2500,    Email: Val@America2030.net

**AND**

**MR. GUO HONGXIN**                                                      1st Respondent

No. 2111 Chengxin Avenue

High-Tech Industrial Park

Jiangning District Nanjing

Jiangsu 211112, P.R. China

Phone: +86-138-01588-098.    Email: guohongxin1@vip.163.com

**SUNPOWER BUSINESS GROUP PTE LTD**                                              2nd Respondent

55 Lorong L Telox Kurau

# 3 – 63 Bright Centre

Singapore, Singapore. 425500

Phone: +86-138-01588-098    Email: guohongxin1@vip.163.com

(collectively referred to as "the Parties")

WHEREAS the Parties have agreed to refer to arbitration certain disputes arising between them, AND have agreed that such arbitration shall be conducted by The Arbitrator Conflict Resolution Centre in St. Kitts & Nevis, the Claimant now indicates and make application as follows:

### I.    NATURE OF DISPUTE

The Applicant ("Petitioner") claims against the Respondents both jointly and severally.

At all material times the first Respondent was an agent, servant, representative and/or employee of the second Respondent and in doing the things alleged herein the first Respondent was acting within the scope of his authority and with the permission, knowledge and consent of the second Respondent.

That Mr. Guo Hongxin committed fraud and defamed Petitioner by misrepresenting facts to High Court of Singapore that America 2030 transferred shared from account of Sunpower Business Group PTE LTD without authority.

That Mr. Guo Hongxin committed fraud and defamed Petitioner by releasing multiple false public announcements with intent to harm Petitioner through defamation by accusing Petitioner publicly of wrong doing.

That Mr. Guo Hongxin committed a tort by defaming and slandering America 2030 publicly and through media that it acted improperly, illegally and that America 2030's conduct with was without authorization.

That Mr. Guo Hongxin communicated to Shentonwire that his shares "Appear to go missing", and Shenton published such an article, implying wrongdoing by Petitioner.

That it's impossible to measure and quantify the extent of irreparable harm and damage caused by Mr. Guo Hongxin, executive of Sunpower Group LTD and Sunpower Business Group PTE LTD.

That America 2030 has a worldwide client base and Mr. Guo Hongxin caused the release of false public announcements which have caused severe damage to America 2030 reputation, disruption in business and loss of income.

That Mr. Guo Hongxin knew, should have known or had reasonable knowledge to know that the public announcements and representations to Singapore High Court were false and misleading and were made with malice to cause harm to Petitioner and were in breach of the Master Loan Agreement ("MLA"), the Custodian Management Agreement ("CMA") and the Power of Attorney ("POA") executed by Mr. Guo Hongxin, who represented in the MLA to have consulted an attorney with respect to its contents and was represented by legal counsel prior to execution of the MLA and throughout the entire time a business relationship existed between Petitioner and Respondent.

That Respondent acted with reckless disregard of the truth and falsified facts in order to damage and tarnish Petitioners business and reputation in order to benefit Respondent and his public company.

That Mr. Guo Hongxin was served with a "Default Notice" on November the 2nd, 2018 whereby he was told the basis of the Default, but he went ahead in total disregard of the facts, failed to reach out to Petitioner to question the Default Notice, and instead made false announcements and engaged in feverish letter writing campaign to refute facts and defame Petitioner.

That Respondent acted negligently in failing to ascertain whether the statements he made were true or false before making them, when at all times the Respondent had documents which contradicted the statements he chose to make publicly and to others.

That as a result of false announcements made by Mr. Guo Hongxin, executive of Sunpower Business Group PTE LTD , America 2030 is being approached by media for comments who further sensationalize the misinformation announced by Sunpower Group LTD, a public entity controlled by Mr. Guo Hongxin.

That Mr. Guo Hongxin is wrongfully representing to media, Singapore High Court, Singapore Central Depository, Depository Broker and CIBC Mellon, that the pledged collateral transferred to the absolute, sole and irrevocable control of America 2030 is under some sort of a "trust", implying that America 2030 breached a fiduciary duty to Respondent. In none of the documents executed between Mr. Guo Hongxin and America 2030 is there any reference to any type of "trust". There has never existed any type of a "trust" and there was none implied in any contracts.

That Mr. Guo Hongxin is an executive of a Singapore public company, Sunpower Group LTD and Mr. Guo Hongxin as an top executive of a public company is held to a higher

standard it knowing the ramifications and consequences of false public announcements in an effort to mislead the public.

That Mr. Guo Hongxin sought to blame Petitioner in media for the poor performance of securities of Sunpower Group LTD.

That such false announcements were intentionally released when Mr. Guo Hongxin knew, should have known and had reason to know, were false, slanderous and constitute libel.

That false announcements released or caused to be released by Mr. Guo Hongxin disrupted Petitioners business and caused it to lose clients and income.

That Mr. Guo Hongxin acted with malice and reckless disregard of the truth in releasing or causing to release false announcements and disrupting Petitioners business.

That Mr. Guo Hongxin himself and through his attorneys obtained ex-parte Injunctive Relief from Singapore High Court, in violation of the MLA, CMA & POA which explicitly prohibit injunctive relief application.

That Mr. Guo Hongxin himself and through his attorneys interfered with the Singapore Central Depository, the Depository Broker as well as CIBC Mellon, the Custodian of securities by providing or causing to be provided to such entities false, slanderous and defamatory statements aimed to discredit and tarnish Petitioners reputation and standing.

That on multiple occasions, Mr. Guo Hongxin had the propensity to exhibit wanton disregard for the validity and existence of the MLA, CMA and POA which he executed on June 4th, 2018.

On June 4th, 2018 Mr. Guo Hongxin executed an "Irrevocable Power of Attorney" granting all rights, title, chattel and dominion to America 2030 Capital Limited (Attorney in Fact), a Hong Kong entity, and by reassignment to America 2030 Capital Limited, a Nevis entity.

The POA, amongst other things states the following in Section 1:
"The Attorney in Facts scope of authority includes, but is not limited to: its ability to have access to, receive, and enquire about the information pertaining to the depository account(s) ("Depository Account(s)" or Accounts(s); place, revise, or cancel orders for sales and purchase of securities; deposit, withdraw and transfer funds or securities to and from the Attorney In Fact's account(s) or any third party account(s) of the Attorney in Fact's choosing; request advancement of the proceeds of securities transactions; execute all contracts and other documents necessary for use of the services and/or products provided by the Depository Broker in relation to the Account(s); close the Account(s); and exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal as holder of the Account."

In Section 3 of the POA, it states the following:
"The Principal hereby unconditionally and irrevocably relinquishes, forfeits and renounces any right it may now or in the future have over the Depository Account(s) to the Attorney In fact. The Principal shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue instructions to the Depository Broker or directly or indirectly interfere with the Attorney In Fact's instructions to said Depository Broker or attempt to seek injunctive relief from any court of law, regulatory body or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Irrevocable Power of Attorney."

Section 5 of the POA states:
"The Principal acknowledges that the Principal is responsible for, and bound by, the instructions that the Attorney In Fact gives the Depository Broker………"

Section 6 of the POA states:
"This Irrevocable Power of Attorney is of independent legal significance and incorporates the rights, waivers, and obligations of the Master Loan Agreement ("MLA"). To the extent that the provisions of this Irrevocable Power of Attorney conflicts with the MLA, this Irrevocable Power of Attorney governs."

Section 7 of the POA states:
"This Power of Attorney is hereby made Irrevocable by the Principal and shall remain in full effect until such time as the Attorney in Fact revokes it by providing a certified board resolution to the Depository Broker to effect the termination of the authority granted to the Attorney In fact under this Irrevocable Power of Attorney."

Section 8 of the POA in ALL CAPS states amongst other things:
"THE PRINCIPAL ORDERS AND MANDATES THE DEPOSITORY BROKER THAT IRRESPECTIVE OF HOW THIS IRREVOCABLE POWER OF ATTORNEY MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM THE ATTORNEY IN FACT AND SHALL NOT BE CONTESTED."

The Custodian Management Agreement ("CMA") repeats and re-incorporates the same covenants as above and further states in Section 2.3:
"The Lender's lien and security interest also includes all proceeds of the foregoing, and all proceeds of proceeds and trades."

Section 2.4 of the CMA states:
"The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing, and maintaining this Agreement."

Section 5.1 of the CMA states:

"Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Depository Broker and does hereby indemnify, discharge, and forever hold harmless the Depository Broker, its officers, directors, employees, agents, and shareholders in relation to the actions of the Lender and will not take any action or seek remedy against the Depository Broker with respect to it complying with and enforcing this Agreement."

The MLA signed by Respondent on June 4th, 2018 states in the Disclaimer Section in all caps, amongst other things, the following:

1) "A DEFAULT WILL CAUSE FORFEITURE OF SECURITIES"

2) "BORROWER MAY OR MAY NOT TOP-UP IN THE EVENT OF A DROP IN VALUE OF COLLATERAL, BUT WAIVES ITS RIGHT TO ASSERT A CLAIM OF CONVERSION, SINCE LENDER MAY TRANSACT AT ANY TIME IN SAID PLEDGED COLLATERAL AND MAY DO SO IN ORDER TO FUND THE LOAN'

3) "LENDER RESERVES THE RIGHT TO TEST THE PLEDGED COLLATERAL FOR VALIDITY AND EFFICACY AND SELL PRIOR TO FUNDING"

4) "LENDER HAS THE PRIVILEDGE TO SAID PLEDGED COLLATERAL AND LENDER IS NOT ESTOPPED FROM ASSERTING ITS RIGHTS TO SAID COLLATERAL IN ACCORDANCE WITH LENDER'S RISK MANAGEMENT POLICY AND IN ORDER TO PROTECT ITS INTERESTS"

5) "LENDER MAY EXERCISE DOMINION OVER THE PLEDGED COLLATERAL IN ACORDANCE WITH THIS AGREEMENT"

6) "BORROWER CONCEDES TO LENDERS RIGHT TO TRANSACT IN THE PLEDGED COLLATERAL"

7) "A DEFAULT OF THE LOAN WILL CANCEL LENDER'S OBLIGATION TO BORROWER"

That irrespective of the existence of the MLA, POA and CMA granting America 2030 Capital Limited, the irrevocable dominion, chattel and sole irrefutable control over fourteen million (14M) shares of Sunpower Group LTD to sell, trade, convert or transfer the securities, the respondent had released, multiple public announcements disregarding and refuting the existence of the MLA, POA and CMA and claiming that America 2030 Capital Limited acted wrongfully, illegally and improperly, in an effort to discredit America 2030 Capital Limited and cause it malicious harm in the eyes of the public at large and relevant third parties.

Further roof supporting the damage caused by Respondent will be provided during the arbitration.

The Petitioner has and is suffering mental pain, duress, humiliation and a loss of reputation and credibility. The Petitioner is in the finance business and depends on trust and credibility in order to stay in business. Respondents defamatory statements and malicious actions have prevented and interfered with Petitioners business and livelihood and Petitioner will continue to suffer for years to come.

## II. JURISDICTION

The Parties agreed to arbitration under and by virtue of an agreement made between them on the 4th day of June, 2018 and agreed that the arbitrator would have jurisdiction to determine all matters, disputes, controversies, claims disputes arising out of the said contract a copy of which is attached to this application.

## III. THE REMEDIES SOUGHT

The amount in controversy is cash proceeds from the sale of some of the 14 million (14M) shares of Sunpower Group LTD (SPWG:SP) as well as remaining securities, which are and at all times were under the sole and exclusive control of Petitioner. Respondent needs to be held accountable and bear responsibility for the false, reckless and malicious announcements and letter writing campaign he engaged in, without disregard to the damage such would cause the Petitioner in light of the existence of the MLA, CMA and POA which gave rise and full authority for Petitioner to act in accordance with such agreements.

It is impossible to quantify the damage caused by the false public announcements made by Mr. Guo Hongxin and by the false and malicious letters written for and on behalf of Respondent to various entities and the loss of business which Petitioner has suffered and will continue to suffer for years to come. The Petitioner is seeking remedies at ten (10) times the amount in controversy in cash and/or securities and ten (10) times for punitive damages in cash and/or securities or any other sum that the arbitrator may find appropriate in respect of general damages, exemplary damages and punitive damages to the extent allowed by law.

That Respondent be ordered to release a public announcement apologizing, recanting the previous announcements and admitting that Respondent was wrong in the previously released announcements. That respondent be ordered to write a letter to Mellon Omnibus, the Singapore Central Depository and to Bahamas Securities Regulators withdrawing the previously written letters and setting forth new facts that America 2030 did in fact act in accordance with its contractual obligations and that Respondent incorrectly erred in issuing the previous letters. All such letters and public announcements are to be first approved by Petitioner, prior to their release and distribution.

That Respondent be ordered to withdraw its injunctive relief obtained through the Singapore High Court by representing to the Singapore High Court that he erred by the application of the injunctive relief and that facts presented to the High Court in the injunctive relief petition were false and erroneous.

Exemplary and Punitive damages to the extent allowed by law.

All costs and fees incurred in pursuing this claim.

Such other and further relief as the arbitrator may deem appropriate.

### IV. VALUE OF THE CLAIM

At the center of the dispute are cash proceeds and securities of SPWG:SP, which originally when turned over to Petitioners control, comprised of fourteen (14M) million shares. Petitioner is seeking ten (10) times that amount for actual damages (in cash and/or securities), pain and suffering, mental anguish and loss of business, and ten (10) times that amount (in cash and/or securities) for punitive damages.

### V. COMMENCEMENT FEE

The commencement fee in the amount of $550.00 has been paid.

NOV 27, 2018
Date

Signature of the Claimant



# THE ARBITRATOR

## ARBITRATION APPLICATION

DECEMBER 21, 2015

THE ARBITRATOR
P.O. Box 2477, Basseterre, St. Kitts

# ARBITRATION APPLICATION

## IN THE MATTER OF AN ARBITRATION BY AGREEMENT OF THE PARTIES

### AND

### (The Arbitration Act, Cap. 3.01)

TO:

The Arbitrator

Address:

Phone:

Fax:

Email:

## PARTIES TO THIS ARBITRATION

BETWEEN:

Party 1                                                                 (the "Claimant")

America 2030 Capital Limited

Address for service: Hamilton Development, Unit B. Charlestown, Nevis.

Phone: 1-623-213-2500,    Email: Val@America2030.net

AND

**MR. MA MING**                                                  1st Respondent

No. 2111 Chengxin Avenue

High-Tech Industrial Park

Jiangning District Nanjing

Jiangsu 211112, P.R. China

Phone: +86-138-01588-068.   Email: frankma@vip.163.com

**TOURNAN TRADING PTE LTD**                                         2nd Respondent

55 Lorong L Telox Kurau

# 3 – 63 Bright Centre

Singapore, Singapore. 425500

Phone: +86-138-01588-068   Email: frankma@vip.163.com

(collectively referred to as "the Parties")

WHEREAS the Parties have agreed to refer to arbitration certain disputes arising between them, AND have agreed that such arbitration shall be conducted by The Arbitrator Conflict Resolution Centre in St. Kitts & Nevis, the Claimant now indicates and make application as follows:

I. **NATURE OF DISPUTE**

The Applicant ("Petitioner") claims against the Respondents both jointly and severally.

At all material times the first Respondent was an agent, servant, representative and/or employee of the second Respondent and in doing the things alleged herein the first Respondent was acting within the scope of his authority and with the permission, knowledge and consent of the second Respondent.

That Mr. Ma Ming committed fraud and defamed Petitioner by misrepresenting facts to High Court of Singapore that America 2030 transferred shared from account of Tournan Trading PTE LTD without authority.

That Mr. Ma Ming committed fraud and defamed Petitioner by releasing multiple false public announcements with intent to harm Petitioner through defamation by accusing Petitioner publicly of wrong doing.

That Mr. Ma Ming committed a tort by defaming and slandering America 2030 publicly and through media that it acted improperly, illegally and that America 2030's conduct was without authorization.

That Mr. Ma Ming communicated to Shentonwire that his shares "Appear to go missing", and Shenton published such an article, implying wrongdoing by Petitioner.

That it's impossible to measure and quantify the extent of irreparable harm and damage caused by Mr. Ma Ming, executive of Sunpower Group LTD and Tournan Trading PTE LTD.

That America 2030 has a worldwide client base and Mr. Ma Ming caused the release of false public announcements which have caused severe damage to America 2030 reputation, disruption in business and loss of income.

That Mr. Ma Ming knew, should have known or had reasonable knowledge to know that the public announcements and representations to Singapore High Court were false and misleading and were made with malice to cause harm to Petitioner and were in breach of the Master Loan Agreement ("MLA"), the Custodian Management Agreement ("CMA") and the Power of Attorney ("POA") executed by Mr. Ma Ming, who represented in the MLA to have consulted an attorney with respect to its contents and was represented by legal counsel prior to execution of the MLA and throughout the entire time a business relationship existed between Petitioner and Respondent.

That Respondent acted with reckless disregard of the truth and falsified facts in order to damage and tarnish Petitioners business and reputation in order to benefit Respondent and his public company.

That Mr. Ma Ming was served with a "Default Notice" on November the 2nd, 2018 whereby he was told the basis of the Default, but he went ahead in total disregard of the facts, failed to reach out to Petitioner to question the Default Notice, and instead made false announcements and engaged in feverish letter writing campaign to refute facts and defame Petitioner.

That Respondent acted negligently in failing to ascertain whether the statements he made were true or false before making them, when at all times the Respondent had documents which contradicted the statements he chose to make publicly and to others.

That as a result of false announcements made by Mr. Ma Ming, executive of Tournan Trading PTE LTD , America 2030 is being approached by media for comments who further sensationalize the misinformation announced by Sunpower Group LTD, a public entity controlled by Mr. Ma Ming.

That Mr. Ma Ming is wrongfully representing to media, Singapore High Court, Singapore Central Depository, Depository Broker and CIBC Mellon, that the pledged collateral transferred to the absolute, sole and irrevocable control of America 2030 is under some sort of a "trust", implying that America 2030 breached a fiduciary duty to Respondent. In none of the documents executed between Mr. Ma Ming and America 2030 is there any reference to any type of "trust". There has never existed any type of a "trust" and there was none implied in any contracts.

That Mr. Ma Ming is an executive of a Singapore public company, Sunpower Group LTD and Mr. Ma Ming as an top executive of a public company is held to a higher

standard it knowing the ramifications and consequences of false public announcements in an effort to mislead the public.

That Mr. Ma Ming sought to blame Petitioner in media for the poor performance of securities of Sunpower Group LTD.

That such false announcements were intentionally released when Mr. Ma Ming knew, should have known and had reason to know, were false, slanderous and constitute libel.

That false announcements released or caused to be released by Mr. Ma Ming disrupted Petitioners business and caused it to lose clients and income.

That Mr. Ma Ming acted with malice and reckless disregard of the truth in releasing or causing to release false announcements and disrupting Petitioners business.

That Mr. Ma Ming himself and through his attorneys obtained ex-parte Injunctive Relief from Singapore High Court, in violation of the MLA, CMA & POA which explicitly prohibit injunctive relief application.

That Mr. Ma Ming himself and through his attorneys interfered with the Singapore Central Depository, the Depository Broker as well as CIBC Mellon, the Custodian of securities by providing or causing to be provided to such entities false, slanderous and defamatory statements aimed to discredit and tarnish Petitioners reputation and standing.

That on multiple occasions, Mr. Ma Ming had the propensity to exhibit wanton disregard for the validity and existence of the MLA, CMA and POA which he executed on June 4th, 2018.

On June 4th, 2018 Mr. Ma Ming executed an "Irrevocable Power of Attorney" granting all rights, title, chattel and dominion to America 2030 Capital Limited (Attorney in Fact), a Hong Kong entity, and by reassignment to America 2030 Capital Limited, a Nevis entity.

The POA, amongst other things states the following in Section 1:
"The Attorney in Facts scope of authority includes, but is not limited to: its ability to have access to, receive, and enquire about the information pertaining to the depository account(s) ("Depository Account(s)" or Accounts(s); place, revise, or cancel orders for sales and purchase of securities; deposit, withdraw and transfer funds or securities to and from the Attorney In Fact's account(s) or any third party account(s) of the Attorney in Fact's choosing; request advancement of the proceeds of securities transactions; execute all contracts and other documents necessary for use of the services and/or products provided by the Depository Broker in relation to the Account(s); close the Account(s); and exercise all rights and privileges and perform all duties and obligations which may now or in the future pertain to the Principal as holder of the Account."

In Section 3 of the POA, it states the following:
"The Principal hereby unconditionally and irrevocably relinquishes, forfeits and renounces any right it may now or in the future have over the Depository Account(s) to the Attorney In fact. The Principal shall not claim any right or privilege or exercise any control whatsoever over the Account(s) and shall not issue instructions to the Depository Broker or directly or indirectly interfere with the Attorney In Fact's instructions to said Depository Broker or attempt to seek injunctive relief from any court of law, regulatory body or stock exchange requesting to invalidate, suspend, limit, impede, terminate or restrict this Irrevocable Power of Attorney."

Section 5 of the POA states:
"The Principal acknowledges that the Principal is responsible for, and bound by, the instructions that the Attorney In Fact gives the Depository Broker........."

Section 6 of the POA states:
"This Irrevocable Power of Attorney is of independent legal significance and incorporates the rights, waivers, and obligations of the Master Loan Agreement ("MLA"). To the extent that the provisions of this Irrevocable Power of Attorney conflicts with the MLA, this Irrevocable Power of Attorney governs."

Section 7 of the POA states:
"This Power of Attorney is hereby made Irrevocable by the Principal and shall remain in full effect until such time as the Attorney in Fact revokes it by providing a certified board resolution to the Depository Broker to effect the termination of the authority granted to the Attorney In fact under this Irrevocable Power of Attorney."

Section 8 of the POA in ALL CAPS states amongst other things:
"THE PRINCIPAL ORDERS AND MANDATES THE DEPOSITORY BROKER THAT IRRESPECTIVE OF HOW THIS IRREVOCABLE POWER OF ATTORNEY MAY BE INTERPRETED, ANY AND ALL ENTITLEMENT ORDERS SHALL COME SOLELY FROM THE ATTORNEY IN FACT AND SHALL NOT BE CONTESTED."

The Custodian Management Agreement ("CMA") repeats and re-incorporates the same covenants as above and further states in Section 2.3:
"The Lender's lien and security interest also includes all proceeds of the foregoing, and all proceeds of proceeds and trades."

Section 2.4 of the CMA states:
"The Borrower agrees to bear all reasonable costs, fees, and out of pocket expenses that might arise in the course of enforcing, executing, and maintaining this Agreement."

Section 5.1 of the CMA states:
"Borrower acknowledges that Borrower is bound by the instructions that the Lender gives the Depository Broker and does hereby indemnify, discharge, and forever hold harmless the Depository Broker, its officers, directors, employees, agents, and

shareholders in relation to the actions of the Lender and will not take any action or seek remedy against the Depository Broker with respect to it complying with and enforcing this Agreement."

The MLA signed by Respondent on June 4th, 2018 states in the Disclaimer Section in all caps, amongst other things, the following:

1) "A DEFAULT WILL CAUSE FORFEITURE OF SECURITIES"

2) "BORROWER MAY OR MAY NOT TOP-UP IN THE EVENT OF A DROP IN VALUE OF COLLATERAL, BUT WAIVES ITS RIGHT TO ASSERT A CLAIM OF CONVERSION, SINCE LENDER MAY TRANSACT AT ANY TIME IN SAID PLEDGED COLLATERAL AND MAY DO SO IN ORDER TO FUND THE LOAN'

3) "LENDER RESERVES THE RIGHT TO TEST THE PLEDGED COLLATERAL FOR VALIDITY AND EFFICACY AND SELL PRIOR TO FUNDING"

4) "LENDER HAS THE PRIVILEDGE TO SAID PLEDGED COLLATERAL AND LENDER IS NOT ESTOPPED FROM ASSERTING ITS RIGHTS TO SAID COLLATERAL IN ACCORDANCE WITH LENDER'S RISK MANAGEMENT POLICY AND IN ORDER TO PROTECT ITS INTERESTS"

5) "LENDER MAY EXERCISE DOMINION OVER THE PLEDGED COLLATERAL IN ACORDANCE WITH THIS AGREEMENT"

6) "BORROWER CONCEDES TO LENDERS RIGHT TO TRANSACT IN THE PLEDGED COLLATERAL"

7) "A DEFAULT OF THE LOAN WILL CANCEL LENDER'S OBLIGATION TO BORROWER"

That irrespective of the existence of the MLA, POA and CMA granting America 2030 Capital Limited, the irrevocable dominion, chattel and sole irrefutable control over fourteen million (14M) shares of Sunpower Group LTD to sell, trade, convert or transfer the securities, the respondent had released, multiple public announcements disregarding and refuting the existence of the MLA, POA and CMA and claiming that America 2030 Capital Limited acted wrongfully, illegally and improperly, in an effort to discredit America 2030 Capital Limited and cause it malicious harm in the eyes of the public at large and relevant third parties.

Further roof supporting the damage caused by Respondent will be provided during the arbitration.

The Petitioner has and is suffering mental pain, duress, humiliation and a loss of reputation and credibility. The Petitioner is in the finance business and depends on trust and credibility in order to stay in business. Respondents defamatory statements and

malicious actions have prevented and interfered with Petitioners business and livelihood and Petitioner will continue to suffer for years to come.

## II. JURISDICTION

The Parties agreed to arbitration under and by virtue of an agreement made between them on the 4th day of June, 2018 and agreed that the arbitrator would have jurisdiction to determine all matters, disputes, controversies, claims disputes arising out of the said contract a copy of which is attached to this application.

## III. THE REMEDIES SOUGHT

The amount in controversy is cash proceeds from the sale of some of the 14 million (14M) shares of Sunpower Group LTD (SPWG:SP) as well as remaining securities, which are and at all times were under the sole and exclusive control of Petitioner. Respondent needs to be held accountable and bear responsibility for the false, reckless and malicious announcements and letter writing campaign he engaged in, without disregard to the damage such would cause the Petitioner in light of the existence of the MLA, CMA and POA which gave rise and full authority for Petitioner to act in accordance with such agreements.

It is impossible to quantify the damage caused by the false public announcements made by Mr. Ma Ming and by the false and malicious letters written for and on behalf of Respondent to various entities and the loss of business which Petitioner has suffered and will continue to suffer for years to come. The Petitioner is seeking remedies at ten (10) times the amount in controversy in cash and/or securities and ten (10) times for punitive damages in cash and/or securities or any other sum that the arbitrator may find appropriate in respect of general damages, exemplary damages and punitive damages to the extent allowed by law.

That Respondent be ordered to release a public announcement apologizing, recanting the previous announcements and admitting that Respondent was wrong in the previously released announcements. That respondent be ordered to write a letter to Mellon Omnibus, the Singapore Central Depository and to Bahamas Securities Regulators withdrawing the previously written letters and setting forth new facts that America 2030 did in fact act in accordance with its contractual obligations and that Respondent incorrectly erred in issuing the previous letters. All such letters and public announcements are to be first approved by Petitioner, prior to their release and distribution.

That Respondent be ordered to withdraw its injunctive relief obtained through the Singapore High Court by representing to the Singapore High Court that he erred by the application of the injunctive relief and that facts presented to the High Court in the injunctive relief petition were false and erroneous.

Exemplary and Punitive damages to the extent allowed by law.

All costs and fees incurred in pursuing this claim.

Such other and further relief as the arbitrator may deem appropriate.

### IV.   VALUE OF THE CLAIM

At the center of the dispute are cash proceeds and securities of SPWG:SP, which originally when turned over to Petitioners control, comprised of fourteen (14M) million shares. Petitioner is seeking ten (10) times that amount for actual damages (in cash and/or securities), pain and suffering, mental anguish and loss of business, and ten (10) times that amount (in cash and/or securities) for punitive damages.

### V.   COMMENCEMENT FEE

The commencement fee in the amount of $550.00 has been paid.

NOV 27, 2018

**Date**                           **Signature of the Claimant**